**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

HENRY BENITEZ,

                              Plaintiff,

            - v -                                           Civ. No. 9:05-CV-1160
                                                                      (NAM/RFT)

B. MAILLOUX, *Prison Guard, Upstate Prison, et al.*

                              Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

HENRY BENITEZ
Plaintiff, *Pro Se*
97-A-2553
Upstate Correctional Facility
PO Box 2001
309 Bare Hill Rd.
Malone, NY 12953

HON. ANDREW M. CUOMO                          GERALD J. ROCK, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for the Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

                    <u>**REPORT-RECOMMENDATION and ORDER**</u>

        *Pro se* Plaintiff Henry Benitez brings this civil rights action, pursuant to 42 U.S.C. § 1983,

claiming that the Defendants violated his First, Eighth, and Fourteenth Amendment rights. Dkt. No.

1, Compl. Plaintiff offers a slew of claims against seventy-five (75) Defendants,[1] including, *inter*

*alia*, excessive force, unconstitutional conditions of confinement, deliberate indifference to his

_____

        [1] Former Defendants V. LaPage and N. Race were dismissed from this action by stipulation of the parties. Dkt.
Nos. 107 & 108.

serious medical needs, due process violations, retaliation, conspiracy, and denial of access to the courts. *Id.* Presently before the Court is Defendants' Motion for Summary Judgment,[2] which the Plaintiff opposes. Dkt. Nos. 144 & 164. For the reasons stated herein, it is recommended that the Defendants' Motion be **granted in part** and **denied in part**.

## I. BACKGROUND

At all times relevant to this action, Plaintiff was an inmate in the custody of the New York State Department of Correctional Services (DOCS). Dkt. No. 144, Defs.' Mot. for Summ. J., 7.1 Statement, at ¶ 1. The majority of Plaintiff's claims stem from events that allegedly occurred from July 18 through September 9, 2004, while he was incarcerated in the Special Housing Unit ("SHU") of Upstate Correctional Facility. *See generally* Compl.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted

---

[2] Defendants Lawrence, Botta, Kaufman, and John Does 1-3 have not been served with process, and therefore have not joined the Motion for Summary Judgment. *See infra* Part II.J.

unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing [that there is ]a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*,

*Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995).   Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment.   *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### B. Eighth Amendment Claims

#### 1. *Excessive Force*

Plaintiff alleges that Defendants Vann, Perry, John Doe 1, Trombley, Price, P. Gilmore, R. DaFoe, R. Lilledahl, and Champagne beat him in violation of his Eighth Amendment rights.  Compl. at ¶ 20.   Plaintiff alleges that on July 20, 2004, Defendants Gilmore, DaFoe, Lilledahl, and Champagne escorted him to Upstate's Draft Processing Unit.   *Id.*   Plaintiff alleges that after searching him, "Gilmore ordered Champagne to turn off the handheld videocassette recorder" and also ordered John Doe 2 to "turn off certain video cameras installed in the corridors."   *Id.*   Then, as Plaintiff was being escorted back to his cell, Gilmore struck him on his chest, causing Plaintiff's head to strike the corridor wall which caused a gash on his forehead.   *Id.* at ¶ 21.   Lilledahl, DaFoe, and Champagne joined in, striking Plaintiff's chest, abdomen, lower back, and legs with batons.   *Id.* Upon seeing blood on Plaintiff's face, Gilmore ordered the others to stop and they complied.   *Id.* Gilmore then placed a "spit mask" on Plaintiff, and took him to his cell.   Upon returning Plaintiff to his cell, Gilmore told Defendant Nurse Lawrence not to provide Plaintiff medication, and to "do the right thing with the medical reports."   *Id.* at ¶ 22.   Gilmore also directed Defendant John Doe 3 not to photograph Plaintiff's forehead injury.   *Id.*

Only Defendant Champagne moves for summary judgment with respect to Plaintiff's claims of excessive force.  Dkt. No. 144, Defs.' Mem. of Law at p. 17.   Champagne's argument in favor of summary judgment is that Benitez "admitted during his deposition that he did not know whether

Champagne had hit him," and that "Champagne was present only to videotape the escort and while other officers did use force when plaintiff attempted to assault them, Champagne did not use any force against plaintiff." *Id.* At his deposition, Plaintiff stated he didn't recall what Champagne did to him during the incident. Dkt. No. 144, Gerald J. Rock Decl., dated Mar. 19, 2008, Ex. I, Pl.'s Dep. Tr., dated May 21, 2007 (hereinafter "Pl.'s Dep."), at p. 75. Given Plaintiff's inability to articulate Champagne's personal involvement in the alleged use of excessive force, we find that Plaintiff has failed to meet his burden of setting forth specific facts showing that there is a genuine issue for trial. Therefore, we recommend that the Motion for Summary Judgment be **granted** as to Plaintiff's claims of excessive force against Champagne. However, Plaintiff has alleged that Champagne participated in the conspiracy to beat him by turning off the video recorder prior to the alleged assault. Compl. at ¶ 20. Questions of fact remain as to Plaintiff's conspiracy claim, and therefore, that claim against Champagne should not be dismissed.

Although Plaintiff alleges in paragraph 20 of the Complaint that Defendants Trombley and Price were involved in the conspiracy to beat him, he alleges no acts of personal involvement on their part whatsoever regarding the alleged use of excessive force. Defendants have not specifically addressed this point, however, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), this Court has the power to review Plaintiff's Complaint for failure to state a claim *at any time*. *See, e.g.*, *Zimmerman v. Burge*, 2008 WL 850677, at *7 (N.D.N.Y. Mar. 28, 2008) (noting that "even where a defendant has not requested dismissal based on the failure of the plaintiff to state a claim upon which relief may be granted, a district court may, *sua sponte*, address whether a *pro se* prisoner has failed to state a claim[.]") (citing 28 U.S.C. § 1915(e)(2)(B)(ii)). Therefore, we recommend that Plaintiff's excessive force and related conspiracy claims be **dismissed** as to Defendants Trombley and Price.

2.  *Conditions of Confinement*

Plaintiff alleges that he was subjected to conditions of confinement that violated his Eighth Amendment rights.  Specifically, Plaintiff alleges that: (1) he was denied numerous meals from July 19 through August 7, 2004, Compl. at ¶¶ 4, 11, 12, 15, 28, 30, 36, 39, 41, 43, 48, 50(2),[3] 52, 55, & 66; (2) his cell in SHU lacked a sink, toilet, running water, had fecal matter on the walls, and "insects and air entered the cell on a daily basis" through an opening in the cell's recreation pen door, Compl. at ¶ 7; (3) he was deprived of soap, shampoo, toilet paper, in-cell running water, and cleaning supplies from July 19 through July 22, 2004, Compl. at ¶¶ 8, 11-12, 15, 28, & 30; and (4) he was denied outdoor recreation from July 20, 2004 through September 11, 2005, the date he filed the instant Complaint, Compl. at ¶¶ 9-10(1).[4]  Defendants do not address Plaintiff's claims concerning the alleged denial of meals, and therefore, we address only the latter three claims.

In order to state a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must allege: (1) objectively, the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) subjectively, the prison officials acted with "deliberate indifference" to an inmate's health or safety.  *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991) (citation omitted) (cited in *Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996)).  On the objective prong, a plaintiff must demonstrate that the conditions of his confinement resulted in "unquestioned and serious deprivations of basic human needs."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (quoted in *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985)).

---

[3]  There are two consecutive paragraphs designated number "50" in the Complaint.  *See* Compl. at p. 18.  We will refer to these paragraphs as "50(1)" and "50(2)," respectively.

[4]  There are also two consecutive paragraphs designated number "10" in the Complaint.  *See* Compl. at pp. 5-6.  We will refer to these paragraphs as "10(1)" and "10(2)," respectively.

a. <u>Conditions Inside Plaintiff's Cell</u>

Plaintiff alleges he was intentionally moved into cell 10-C1-13, which he refers to as the "torture chamber" because it lacked a sink, toilet, and running water, had fecal matter on the walls, and also had a crack in the back door that allowed insects and cold air to enter.  Compl. at ¶¶ 3, 6 & 7.

Defendant Woods, Superintendent at Upstate, avers in his Affidavit that all the cells at Upstate "are properly maintained for inmate occupancy and no cell . . . is purposefully maintained in poor condition as a means to punish inmates."  Dkt. No. 144, Robert K. Woods, Aff., dated Mar. 19, 2008, at ¶ 6.  Woods also swears that he looked inside Plaintiff's cell on several occasions while making rounds, and did not see fecal matter on the walls; Woods does not recall Plaintiff complaining that he lacked a functioning toilet or sink.  *Id.* at ¶ 8.

Beyond his conclusory allegations, Plaintiff offers no evidence on the record that he was deprived of water or a functioning toilet from the time he was transferred to cell 10-C1-13 through the filing of the instant lawsuit.  Plaintiff's precise allegation is that he was deprived of "in-cell running water."  Compl. at ¶¶ 11-12, 15, 28, & 30.  Plaintiff does not allege that he was completely deprived of water, nor of the opportunity to wash and/or bathe in due course, nor that he was unable to relieve himself due to in-access to a functioning toilet.  We note that lack of access to running water, by itself, does not constitute an Eighth Amendment violation.  *See James v. Monroe County Jail*, 2005 WL 2030730, at *3 (W.D.N.Y. Aug. 23, 2005) (citing cases).

With respect to Plaintiff's claim about the opening in the cell that allowed insects and air to enter, the Second Circuit has previously held that exposure to bitterly cold temperatures for a prolonged period of time can create a colorable Eighth Amendment claim.  *See Gaston v. Coughlin*,

249 F.3d 156, 164 (2d Cir. 2001); *Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988) (reversing grant of summary judgment where prisoner alleged he had been deliberately exposed to bitter cold for three months); *Wright v. McMann*, 387 F. 2d 519 (2d Cir. 1967) (holding that exposure to bitter cold for eleven days along with other unsanitary conditions could constitute an Eighth Amendment violation if proven).   However, in this case, there is no evidence that the temperature inside Plaintiff's cell was so bitterly cold as to fall below minimum standards of decency.   Although Plaintiff alleges that cold drafts of air came into his cell through a crack in the back door, a Central Office Review Committee (CORC) decision from March 2, 2005, stemming from a Grievance Plaintiff filed on January 17, 2005, indicates that "[t]he air temperature in the cell was . . . checked and was well within acceptable guidelines." Dkt. No. 164, Pl.'s Opp. to Woods Aff., Ex. D, CORC Decision dated Mar. 2, 2005.

Moreover, the facts alleged in the instant Complaint are dissimilar from those cases where the Second Circuit has found that an Eighth Amendment violation may have occurred due to exposure to cold temperatures.   For example, Plaintiff does not allege he was exposed to near freezing or sub-zero temperatures for a prolonged period of time, as in *Corselli*, *Gaston*, and *Wright*, nor does he allege that he was denied adequate clothing or bedding to maintain adequate body warmth as in *Wright*.   Finally, Plaintiff does not allege that he was subjected to substantial direct exposure to the elements, such as through an open or broken window as in *Corselli*, *Gaston*, and *Wright*, rather, he alleged in a Grievance dated January 17, 2005 that "cold air enters the cell through a crevice or opening between the edges of the door and the doorcase." Pl.'s Aff. in Opp'n to Woods Aff., Ex. D, Grievance dated Jan. 17, 2005.  In sum, Plaintiff has failed to allege sufficient facts to create a cognizable Eighth Amendment claim based on deprivation of the human need of warmth.

*See Trammel v. Keane*, 338 F.3d 155, 164-65 (2d Cir. 2003) (upholding grant of summary judgment when plaintiff failed to allege he endured conditions similar to those in *Corselli*, *Gaston*, and *Wright*).  Therefore, it is recommended that this claim be **dismissed**.

Even if we were to assume, *arguendo*, that Plaintiff was subjected to constitutionally significant cold temperatures under the objective prong of the Eighth Amendment test, his claim would fail under the subjective prong.  The record shows that Plaintiff submitted a Grievance concerning the crack in his door on January 17, 2005, and thereafter a work order was submitted per the recommendation of the Inmate Grievance Resolution Committee (IGRC).  Pl.'s Aff. in Opp'n to Woods Aff., Ex. D, Grievance dated Jan. 17, 2005 & IGRC Decision dated Feb. 2, 2005. Defendant Woods states in his Affidavit that Benitez demonstrated to him "that there was air blowing in through the door at the back of his cell that leads to his outdoor exercise pen," and that he took steps to have the problem remedied after which Plaintiff "no longer complained [] about [the] draft in his cell."  Woods Aff. at ¶ 10.  Plaintiff does not deny that the problem with the door was remedied.  Thus, there is no factual basis on the record to support a claim of deliberate indifference with respect to the draft in his cell, and it is recommended that this claim be **dismissed** on that basis as well.

b.  Deprivation of Toiletries and Cleaning Supplies

Plaintiff alleges that Defendant Burgess confiscated his soap and shampoo in order to prevent him from cleaning his cell, which Plaintiff alleges had fecal matter on its walls.  Compl. at ¶ 8. Plaintiff further alleges that he was denied in-cell running water, cleaning supplies, and toilet paper on July 20, 21, and 22, 2004.  *Id.* at ¶¶ 11-12, 15, 28, & 30.  Even assuming Plaintiff's allegations to be true, such deprivations over a short three-day period do not amount to an Eighth Amendment

violation.[5]  *See Cusamano v. Sobek*, 2009 WL 211155, at *44 (N.D.N.Y. Jan. 26, 2009) ("[A] mere denial of [] toilet paper and soap on several occasions for a few days is . . . not a denial of the minimal civilized measure of life's necessities." (internal quotation marks and citations omitted)) (citing *Davidson v. Murray*, 371 F. Supp. 2d 361, 372-73 (W.D.N.Y. 2005)); *see also McNatt v. Unit Manager Parker,* 2000 WL 307000, at *4 (D. Conn. Jan. 18, 2000) (the denial of toilet paper for one day, and toiletries and cleaning supplies for multiple days is not actionable).  Therefore, it is recommended that these claims be **dismissed**.

### c.  Denial of Outdoor Recreation

Plaintiff alleges that from July 20, 2004 through the date he filed the instant Complaint on September 11, 2005, forty-three (43) Defendants denied him or approved the denial of his daily one-hour outdoor recreation time.  Compl. at ¶ 9.  Plaintiff offers no details or dates to accompany that allegation, reducing it to a naked claim that he was willfully denied outdoor recreation for a period of over one year by forty-three (43) persons.  With the exception of Defendant Perry, whom Plaintiff alleges ordered the other guards not to allow him recreation, Plaintiff has not made any specific allegations against the other forty-two (42) Defendants named in this claim.  He also fails to allege on what dates each Defendant participated in the alleged denial of his outdoor recreation time.  Further weakening Plaintiff's claim is his statement at his deposition that "[t]here might have been days when I got recreation."  Pl.'s Dep. at p. 53.

In sum, this broad claim lacks the specificity necessary to put the Defendants sufficiently on notice as to the claims brought against them, and is therefore conclusory.  *See Barr v. Abrams*, 810

---

[5] In his Memorandum of Law, Plaintiff alleges that he was deprived of these items from July 19 through August 7, 2004.  Dkt. No. 164, Pl.'s Mem. of Law at p. 7.  However, there is no allegation in his Complaint regarding any deprivation of these items after July 22, 2004.  New allegations are not properly presented in a response to a dispositive motion, and therefore, the Court will not consider these new allegations.

F.2d 358, 363 (2d Cir. 1987) (conclusory and vague allegations may be dismissed when they offer "a litany of general conclusions that shock but have no meaning").  Therefore, it is recommended that this claim be **dismissed**.

Plaintiff urges the Court to consider all of his conditions of confinement claims holistically, and maintains that when considered jointly and in context, questions of fact remain concerning all his conditions of confinement claims.  Pl.'s Mem. of Law at p. 7.  A combination of conditions might create an Eighth Amendment violation, but only when the conditions "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise–for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. at 304.  With the exception of his food deprivation allegation, which the Defendants have not challenged, Plaintiff has failed to demonstrate that material questions of fact exist concerning his other conditions of confinement claims relating to his other human needs.  Considering each of those claims together would not change our conclusion that no material questions of fact exist.  Therefore, it is recommended that all of Plaintiff's conditions of confinement claims be **dismissed**, with the exception of his claims related to food deprivation.

### 3. *Deliberate Indifference to Medical Needs*

Plaintiff makes several allegations that his medical needs were not properly addressed, thereby causing violations of his Eighth Amendment rights.  *See* Compl. at ¶¶ 2, 22-23, 25, 29, 38, 40, 42, 44, 47, 49, 50(1), 51, 65, 70, & 72-73.  Defendants do not move for summary judgment on the majority of these claims, but rather, move only as to (1) Plaintiff's claims regarding his Hepatitis C treatment, Compl. at ¶ 2; (2) Defendant Nurse Walsh's alleged denial of medical care on August 4, 2004, Compl. at ¶ 65; and (3) the approval of a restricted diet by Defendants Woods and

Weissman, Compl. at ¶ 64.

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must allege conduct that is "'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway I*, 37 F.3d 63, 66 (2d Cir. 1994)). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm.

*-12-*

*Farmer v. Brennan*, 511 U.S. at 836.  This requires "something more than mere negligence . . . but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*).  Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'"  *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

a.  <u>Hepatitis C Treatment</u>

In paragraph 2 of his Complaint, Plaintiff alleges, *inter alia*, that Defendants Mailloux, Brown, Cook, Walsh, Lawrence, Chesbrough, Race, Smith, Weissman, Richards, and Wright terminated his Hepatitis C treatment plan as retaliation for grievances Plaintiff filed against them. Compl. at ¶ 2.  At his deposition, Plaintiff stated that while at Auburn Correctional Facility, he was prescribed Atarax to relieve him of itching and body irritation caused by his Hepatitis C infection, but that said medication was not provided to him at Upstate per the order of Defendant Richards and with the approval of Defendants Weissman and Wright.  Pl.'s Dep. at pp. 15-16.  Plaintiff stated that he was given Benadryl and Vistaril instead of Atarax, though neither provided relief.  *Id.* at p. 17. Defendant Dr. Weissman confirms in her Affidavit that upon his arrival at Upstate, Plaintiff's prescription was changed from Atarax to Vistaril, and states that both medications have the same active ingredient: Hydroxyzine.[6]  Dkt. No. 144, Dr. Evelyn Weissman Aff., dated Mar. 20, 2008, at

_____

[6] Plaintiff urges the Court not to consider Weissman's conclusion that Atarax and Vistaril are brand names for the same active ingredient because there is no allegation that Weissman is competent to testify to that fact.  Pl.'s Mem. of Law at p. 34.  However, as a doctor, Weissman is clearly qualified to make such a conclusion regarding medication
(continued...)

¶ 26.  Therefore, by Plaintiff's own admission, his treatment for Hepatitis C was not terminated, but rather, the medication was changed.  It is well established that a mere disagreement as to the appropriate course of treatment does not create a constitutional claim.  *Alston v. Howard*, 925 F. Supp. 1034, 1040 (S.D.N.Y. 1996).  A prisoner does not have the right to the treatment of his choice.  *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).  Therefore, the change in medication from Atarax to Vistaril, which both have the same active ingredient, does not constitute deliberate indifference notwithstanding Plaintiff's preference for Atarax.  Therefore, that claim should be **dismissed.**

Also in paragraph 2 of the Complaint, Plaintiff makes the following conclusory allegations:

[f]rom September 2002 to the date of the filing of this lawsuit . . . [the Defendants] willfully and knowingly falsely reported to one another that [Plaintiff] refused on numerous occasions to comply with 'sick call' procedures as well as with his hepatitis C medical treatment plan.  During that time, these defendants willfully denied [Plaintiff] medical care and treatment for several serious physical ailments . . . in reprisal for [Plaintiff] having filed numerous grievances against them.

Compl. at ¶ 2.

Plaintiff's claim that he was denied treatment in retaliation from September 2002 through the date this action was commenced on September 11, 2005, without any specific factual allegations in support of that claim, is wholly conclusory and should be **dismissed**, notwithstanding Defendants' failure to address this claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  In addition, to the extent Plaintiff intended to allege that several Defendants made false reports about his compliance with sick call procedures as a constitutional violation by itself, there is "no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857,

---

[6](...continued)

that she prescribed.  Furthermore, a routine internet search confirms her conclusion.  Information *available at* www.drugs.com.

*-14-*

862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)); *see also Gill v. Riddick*, 2005 WL 755745, at *7 (N.D.N.Y. Mar. 31, 2005).   Therefore, this claim should be **dismissed** as well.

b. August 4, 2004 Incident

Plaintiff alleges that on August 4, 2004, he "asked Walsh for emergency medical treatment due to extremely painful, bleeding cuts and warts on his penis," as well as for "severe abdominal and liver pain" caused by a nutriloaf and raw cabbage diet.  Compl. at ¶¶ 64-65.  Defendants point to Plaintiff's medical records, which indicate that on August 4, 2004, Plaintiff "refused to come out of [his] cell for [a] medical [evaluation]."   Weissman Aff., Ex. C, Pl.'s Ambulatory Health R. ("AHR"), entry dated Aug. 4, 2004.  Defendants contend that because Plaintiff refused to leave his cell in order to be evaluated, Defendant Walsh was never given the opportunity to treat Plaintiff, and therefore, his claim is baseless.

Plaintiff denies refusing to leave his cell on that date, and asserts that given his denial, questions of fact remain on this claim.  Pl.'s Mem. of Law at p. 35.  Plaintiff further alleges that Defendant Lawrence falsified his AHR in order to "cover up the deliberate and wrongful refusal of defendant Walsh to provide [him] with requested emergency medical treatment." Dkt. No. 164, Pl.'s Opp. to Weissman Aff. at ¶ 30.  We note that Plaintiff's allegation that Lawrence falsified his AHR on August 4th is not alleged in the Complaint, but rather, is offered in rebuttal to Defendant Weissman's Affidavit.  Beyond his denial and new allegation against Lawrence, Plaintiff offers no evidence that calls into question the documentary evidence presented by Defendants. The Second Circuit has held that "mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case."   *Flaherty v.*

*-15-*

*Coughlin*, 713 F.2d at 13 (citation omitted). Here, Plaintiff's conclusory and novel contention that Lawrence falsified his AHR are not enough to withstand summary judgment on this claim. Therefore, it is recommended that this claim be **dismissed**. *See, e.g., Young v. Corbin*, 889 F. Supp. 582, 584 (N.D.N.Y. 1995) ("Once the movant for summary judgment has established a prima facie case demonstrating the absence of a genuine issue of material fact, the non-moving party must come forward with enough evidence to lead a rational trier of fact to find for the non-moving party." (citing *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### c. Approval of Restricted Diet

Benitez alleges that as a consequence of being convicted on charges brought against him in a misbehavior report, he was sentenced to seven (7) days on a nutriloaf and raw cabbage diet on August 1, 2004. Compl. at ¶ 62. The imposition of a restricted diet for a period of seven (7) days, without more, does not constitute a sufficiently serious deprivation to create a viable Eighth Amendment claim. *Smith v. Burge*, 2006 WL 2805242, at *11, n.78 (N.D.N.Y. Sept. 28, 2006) (citing cases for the proposition that the imposition of a nutritionally adequate restricted diet does not constitute an Eighth Amendment violation).

In this case, Plaintiff asserts that Defendants Weissman, Richards, and Woods approved of the imposed dietary punishment, and thereby "disregarded the known fact[] that consumption by Benitez of nutriloaf diet meals would inflict upon [him] severe abdominal and liver pain." Compl. at ¶ 64. Plaintiff alleges that the diet caused him: "(1) to bleed from his rectum; (2) extreme abdominal and liver pain that severely aggravated his hepatitis B and C condition; (3) severe emotional distress; and (4) severe mental anguish." *Id.*

Weissman denies having any knowledge that the diet would harm Plaintiff, and states that

*-16-*

> [t]he restricted diet loaf has been formulated to provide sufficient nutrition for those who eat it.  I was at no time aware of any medical contraindication to plaintiff receiving the loaf.  I understand that he alleges that he is unable to defecate the loaf and thus experiences severe pain when receiving it.  I know of no medical reason why plaintiff [would] have any problems defecating the loaf.

Weissman Aff. at ¶ 29.

Although Plaintiff alleges it was a "known fact" that the restricted diet would physically harm him, he does not allege in what way his Hepatitis conditions were aggravated by his consumption of the nutriloaf.  *See, e.g., Chavis v. Curlee*, 2008 WL 508694, at *8 (N.D.N.Y. Feb. 21, 2008) (noting plaintiff's failure to explain how his Hepatitis condition was exacerbated).  Nor does he give any rational explanation for why the nutriloaf, as opposed to regular food, would give him severe pain or cause him to bleed when defecating.

Finally, beyond Plaintiff's allegations, there is no evidence on the record that Plaintiff was harmed as a result of his restricted diet.  Plaintiff submits a copy of his AHR showing that on June 8, 2001, he complained of pain when defecating.  Pl.'s Aff. in Opp'n to Weissman Aff., Ex. L, Pl.'s AHR, entry dated June 8, 2001.  However, that AHR entry was made over three years prior to the imposition of the restricted diet on August 1, 2004.  Also, there is no indication from the 2001 AHR entry that the pain was a consequence of a nutriloaf and cabbage diet.  The record also shows that Plaintiff filed a Grievance on October 10, 2004, in which he complained: "For the past two months Dr. Weissman, Dr. Richards, N. Race, R.K. Woods, and all 10-Building nurses have deliberately ignored my verbal and written complaints regarding the serious nature and extent of harm that the restricted diet has thus far caused me."  Pl.'s Aff. in Opp'n to Weissman Aff., Ex. J, Grievance dated Oct. 10, 2004.  As in his Complaint, Plaintiff did not explain in that Grievance how or why the restricted diet was harming him.

In sum, we find that, viewing the evidence in a light most favorable to Plaintiff, no

*-17-*

reasonable jury could find that he was subjected to a substantial risk of serious harm due to the imposition of the seven (7) day restricted diet.   Therefore, we recommend that this claim be **dismissed**.

### C.  Due Process Claims

Plaintiff alleges violations to his due process rights stemming from disciplinary hearings conducted during July 2004.  Compl. at ¶¶ 45-46, 53-54, & 56-63.  Specifically, Plaintiff alleges he was not afforded the opportunity to attend disciplinary hearings held on July 29 and 31, and August 1, 2004, where he was found guilty of various charges brought against him.   *Id*.

In order to state a procedural due process claim pursuant to the Fourteenth Amendment, an inmate must first establish that he enjoys a protected liberty interest.  *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).  Such interests are derived from the Fourteenth Amendment Due Process Clause itself or from state statute or regulations.  *Id*.

The Supreme Court held in *Sandin v. Conner* that state created liberty interests shall be limited to those deprivations which subject a prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Thus, a prisoner asserting a denial of due process as a result of segregated confinement or loss of privileges must (1) make a threshold showing that an atypical and significant hardship was imposed upon him, and (2) establish that the "state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint."  *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).

While the Second Circuit has cautioned that "there is no bright-line rule regarding the length

or type of sanction" that meets the *Sandin* standard, *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999), it has made clear that confinement in SHU for a period of one year constitutes atypical and significant restraint on inmates, deserving due process protections, *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) (stating that confinement in SHU exceeding 305 days was atypical); *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (finding 305 days of SHU confinement atypical).

Defendants have submitted a copy of Plaintiff's Inmate Disciplinary History, which provides the following information about the aforementioned hearings:[7]

| # | Date of Disciplinary Hearing | Hearing Officer | Sentence Imposed | Dates Sentence(s) to be Served |
|---|---|---|---|---|
| 1 | 7/29/04 | Lt. Anctil | 3 months SHU confinement<br>3 months loss of packages, commissary, and phone | 12/30/12 -3/30/13<br><br>1/31/14 - 4/30/14 |
| 2 | 7/31/04 | Lt. Zerniak | 3 days restricted diet | 8/04/04 - 8/7/04 |
| 3 | 7/31/04 | Lt. Zerniak | 12 months keeplock | 12/7/20 - 12/7/21 |
| 4 | 8/1/04 | A. Boucaud | 7 days intermittent restricted diet<br>7 days intermittent restricted diet | 8/9/04 - 8/16/04<br>8/18/04 - 8/25/04 |
| 5 | 8/1/04 | A. Boucaud | 12 months SHU confinement<br>12 months loss of packages, commissary, and phone<br>12 months good-time credit<br>$26.85 in restitution | 3/30/13 - 3/30/14<br><br>4/30/15 - 10/30/15 |
| 6 | 8/1/04 | A. Boucaud | 6 months SHU confinement<br>6 months loss of packages, commissary, and phone<br>6 months good-time credit | 3/30/14 - 9/30/14<br><br>4/30/14 - 4/30/15 |
| 7 | 8/1/04 | A. Boucaud | 7 day intermittent restricted diet | 8/27/04 - 9/3/04 |

[7] We have omitted information concerning the nature of the infractions because it is not relevant to our due process discussion.

*-19-*

Woods Aff., Ex. B, Pl.'s Disciplinary Hist.

As the above chart indicates, Plaintiff was sentenced to several terms of SHU and keeplock confinement that he has not yet served, and will not serve until 2012 at the earliest. Defendants argue that because Plaintiff has not yet served these sentences, he has not suffered any atypical and significant hardship, and therefore, he cannot establish that he has a protected liberty interest under *Sandin*. Defs.' Mem. of Law at pp. 8-12. Plaintiff asserts that since "there is no evidence in the record [to] suggest that Benitez would not be required to serve the sentences at issue in the future," the Court should focus on the length of the sentences themselves, not what he was actually served to date. Pl.'s Mem. of Law at pp. 27. In addition, Plaintiff argues that pre-hearing sanctions were imposed, such as confining Plaintiff in SHU under the alleged conditions previously addressed in our discussion of Plaintiff's Eighth Amendment claims. *See supra* Part II.B.2. However, the record shows that during July and August, 2004, Plaintiff was serving a SHU sentence stemming from a Disciplinary Hearing held on November 9, 2001. Woods Aff., Ex. B. Therefore, at least in terms of his confinement in SHU, Plaintiff was not subjected to "pre-hearing sanctions," but rather, preexisting sanctions.

The Second Circuit has held that when analyzing whether a deprivation is atypical and significant under *Sandin*, "courts should consider the degree and duration of the sentence *actually imposed* in the hearing and not the maximum sentence that might have been imposed." *Scott v. Albury*, 156 F.3d 283, 288 (2d Cir. 1998) (emphasis added). "No right to due process is implicated in the prison context unless a liberty interest has been deprived, and we read *Sandin* to require that we look to actual punishment in making this determination." *Id.* at 287. Thus, the Second Circuit has made clear that whether a punishment is atypical and significant is to be measured by the time

actually spent in disciplinary confinement, not the potential time that might be spent.  Such approach is consistent with *Sandin*, which limited state-created liberty interests to those deprivations that are atypical and significant "in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. at 484.

Therefore, Plaintiff's due process claims regarding Disciplinary Hearings # 1, 3, & 5-6, rendered on July 31 and August 1, 2004, should be **dismissed** because the sentences have not yet been served and therefore Plaintiff cannot demonstrate that he suffered an atypical and significant hardship that could potentially create a liberty interest protected by the Fourteenth Amendment's Due Process Clause.[8]  Essentially, these claims are not yet ripe because Plaintiff has suffered no deprivation, atypical or otherwise.  Therefore, it is recommended that Plaintiff's due process claims related to those Disciplinary Hearings be **dismissed**.[9]

---

[8] We note that in addition to time in SHU, Plaintiff was also sentenced to loss of good-time credits in Hearings # 5-6.  Therefore, he is challenging both the conditions and duration of his confinement.  Under the "favorable termination rule" announced in *Heck v. Humphrey*, 512 U.S. 477 (1994), and the Second Circuit's subsequent decision in *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006), the Court would have been forced to dismiss Plaintiff's claims related to those two Hearings unless Plaintiff agreed to forever forgo all current and future challenges to his losses of good-time credits.  However, because Plaintiff's due process claims regarding these Hearings are not yet ripe, we need not inquire as to whether Plaintiff is willing to make such concession.

[9] The Court recognizes that in New York State, a three-year statute of limitations applies to § 1983 claims.  These claims generally accrue when a plaintiff "knows or has reason to know of the injury which is the basis of his action." *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994).  Thus, courts must focus on when a "plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action." *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980).  Courts in this District have generally set the accrual date for procedural due process claims related to disciplinary hearings either at the date of the disciplinary hearing, or at the date the prisoner's final administrative appeal is decided.  *See, e.g.*, *Saunders v. Green*, 2007 WL 1133271, at *2 (N.D.N.Y. Apr. 16, 2007); *LeBron v. Swaitek*, 2007 WL 3254373, at *2 (N.D.N.Y. Nov. 2, 2007); *see also Abbas v. Dixon*, 2004 WL 2202640, at *2 (W.D.N.Y. Sept. 30, 2004).  Thus, for a prisoner in Plaintiff's unique situation, the SOL could potentially run out well before he serves the sentence from which his liberty interest could germinate.  Tolling issues would generally be decided under New York law, however, the application of state tolling rules is inappropriate when such rules would "defeat the goals" of § 1983.  *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (quoting *Hardin v. Straub*, 490 U.S. 536, 539 (1989)).  For the purposes of deciding this motion, we need not decide whether (1) New York tolling law should apply in this § 1983 action under *Pearl*; and, assuming it does, whether (2) the three-year SOL would be deemed equitably tolled should Plaintiff re-file his due process claims at an appropriate point in the future; and (3) whether Defendants would be collaterally estopped form raising a SOL affirmative defense given their present position that Plaintiff has not yet suffered a deprivation of a liberty interest.

*-21-*

In Hearings # 2, 4, & 7, Plaintiff was sentenced to a restricted diet for three (3) days, an intermittent restricted diet for two non-consecutive seven (7) day terms, and another seven (7) day intermittent restricted diet, respectively.  Defendants do not address Plaintiff's due process claims regarding these Hearings.  However, we find that, given our previous discussion related to Plaintiff's restricted diet, as a matter of law, these short-term deprivations do not constitute atypical and significant hardships, and therefore, no liberty interest has been implicated with respect to those Hearings.  *See Johnson v. Gummerson*, 1999 WL 822523, *1 (2d Cir. Sept. 24, 1999); *see also Amaral v. Greis*, 2001 WL 1705112, at *2 (W.D.N.Y. Nov. 5, 2001) ("[I]n order to allege an atypical and significant hardship, it is not sufficient merely to allege a dietary restriction, but rather, a plaintiff must allege that the restricted diet is nutritionally inadequate or otherwise poses a threat to his physical well-being.").  Therefore, we recommend **dismissal** of Plaintiff's claims related to those Hearings pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### D. First Amendment Claims

#### 1.  *Retaliation and False Misbehavior Reports*

Plaintiff alleges Defendants Bedard, Rowe, Burgess, Caron, Brown, McDonald, Church, LaPage, Price, King, Trombley, and Lawrence filed false misbehavior reports against him as retaliation for grievances he filed against them and other Defendants.  Compl. at ¶¶ 10(1), 16, 18, 31, & 50.[10]  The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can

---

[10] Plaintiff also makes several other retaliation claims related to his Eighth Amendment excessive force and deliberate indifference claims.  Defendants have not moved for summary judgment as to those claims, and therefore, we do not address them.

*-22-*

be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988)), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove, "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted). Thus, there must be a "causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted).

A plaintiff may meet the burden of proving an inappropriate retaliatory motive by presenting circumstantial evidence of a retaliatory motive, such as temporal proximity, thus obviating the need for direct evidence. *Bennett v. Goord*, 343 F.3d at 138-39 (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia*, the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded). Other factors that can infer an improper or retaliatory motive include the inmate's prior good disciplinary record, vindication at a hearing on the matter, and statements by the defendant regarding his motive for disciplining plaintiff. *McEachin v. Selsky*, 2005 WL 2128851, at *5 (N.D.N.Y. August 30, 2005) (citing *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995)).

Moreover, "in the prison context [the Second Circuit has] previously defined 'adverse action' *objectively*, as retaliatory conduct 'that would deter a similarly situated individual of ordinary

-23-

firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (emphasis in original). This objective test will apply even though a particular plaintiff was not himself deterred. *Id.* If the plaintiff can carry that burden, the defendants will still be entitled to summary judgment if they can show, by a preponderance of the evidence, that they would have taken the same action in the absence of the prisoner's First Amendment activity. *Davidson v. Chestnut*, 193 F.3d 144, 148-49 (2d Cir. 1999); *see Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998); *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994).

The Supreme Court has noted that the right to petition government for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights." *See United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967). The Second Circuit has held that within the prison context, "inmates must be 'permit[ted] free and uninhibited access . . . to both *administrative and judicial* forums for the purpose of seeking redress of grievances against state officers.'" *Franco v. Kelly*, 854 F.2d at 589 (quoting *Haymes v. Montanye*, 547 F.2d 188, 191 (2d Cir. 1976)) (emphasis and alterations in original).

In this case, Plaintiff alleges that these Defendants retaliated against him because he filed numerous complaints and grievances against them and their co-workers. However, Plaintiff has failed to articulate a causal connection between the grievances he filed and the alleged retaliatory filing of false misbehavior reports against him. First, Plaintiff does not identify any specific grievance he filed, nor does he attempt to link any specific grievance to a specific Defendant. Rather, Plaintiff relies on the undisputed fact that he has filed over 350 grievances from September 2002 through September 2005 against Upstate employees and several of the named Defendants.

Because Plaintiff has failed to provide any detail regarding the grievances he filed and against whom, the Court cannot analyze whether there is a temporal proximity between the filing of those grievances and the alleged retaliatory acts.  Furthermore, the fact of Plaintiff's administrative litigiousness does not by itself create an inference of a causal connection.

Finally, the other *Colon* factors (record of good behavior, vindication at a disciplinary hearing, and defendant's statements regarding his motive) all weigh heavily against Plaintiff.  Plaintiff has a lengthy disciplinary record, he was found guilty at each Disciplinary Hearing stemming from these allegedly false misbehavior reports, and he has alleged no statements attributable to these Defendants regarding their acts.  Pl.'s Mem. of Law at p. 20; Pl.'s Inmate Disciplinary Hist.  Therefore, it is recommended that these retaliation claims be **dismissed**.

Plaintiff also alleges that several misbehavior reports and false misbheavior reports were issued against him, though he does not allege that these reports were filed in retaliation.  Compl. at ¶¶ 5, 13-14, 17, 24, 27, & 30-31.  With respect to these misbehavior reports, Plaintiff has not alleged any constitutional violation or otherwise improper action on the part of the Defendants.  We reiterate that there is "no general constitutional right to be free from being falsely accused in a misbehavior report."  *Boddie v. Schnieder*, 105 F.3d at 862 (citation omitted).  Therefore, to the extent Plaintiff intended to assert these allegations as separate constitutional claims, it is recommended that they be **dismissed**.

### 2. *Access to the Courts*

Plaintiff alleges Defendants Bedard, Burgess, Brown, McGaw, Oropallo, Garrison, Caron, and Bennett, with the knowledge and approval of twenty-two (22) other Defendants, "refused to forward Benitez's daily law library request slips to the law library in order to prevent Benitez from

prosecuting his pending federal civil rights actions."  Compl. at ¶ 69.  Plaintiff also alleges that

during the alleged use of excessive force that occurred on July 20, 2004, Defendants Trombley,

Price, and Perry "confiscated and destroyed all of Benitez's legal documents with the knowledge

and approval of LaClair, Woods, Boucaud, Vann, and Bellamy," which prevented Plaintiff from

prosecuting other civil actions.  *Id.* at ¶ 26.[11]

Under the First Amendment, prisoners have a right to reasonable access to the courts.

*Bounds v. Smith*, 430 U.S. 817, 821 (1977).  In order to prevail on an access to the courts claim, a

plaintiff must demonstrate that (1) the defendant acted deliberately and maliciously, and (2) the

plaintiff suffered an actual injury.  *Lewis v. Casey*, 518 U.S. 343, 353 (1996); *Cusamano v. Sobek*,

2009 WL 211155, at *50 (N.D.N.Y. Jan. 26, 2009).

The Defendants assert that Plaintiff's claim must fail because he has not demonstrated that

the Defendants caused him an actual injury, i.e., that prison officials frustrated or impeded his efforts

to pursue a non-frivolous legal claim.  *Lewis v. Casey*, 518 U.S. at 354.  Plaintiff asserts that his

following civil actions have been prejudiced: *Benitez v. Duquette,* 9:03-CV-973 (N.D.N.Y.); *Benitez*

*v. Mailloux*, 9:05-CV-1160 (N.D.N.Y.); *Benitez v. Locastro*, 9:04-CV-423 (N.D.N.Y.);  *Benitez v.*

*Ham*, 9:04-CV-1159 (N.D.N.Y.); and *Benitez v. Straley*, 9:01-CV-181 (S.D.N.Y.).  Compl. at ¶ 69.

Although Plaintiff attempts to point to several instances where his civil actions have been

prejudiced, he fails to tie those alleged prejudices to the acts he attributes to the Defendants.  For

example, in his Memorandum of Law, Plaintiff claims that he has not been provided sufficient

writing paper, but nowhere in his Complaint does he claim that any Defendant deprived him of

paper.  Also, Benitez claims that he has been prevented from filing dispositive motions and

---

[11] Defendants do not specifically address the latter claim, however, the Court will review it pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

interrogatories in the aforementioned cases.  Pl.'s Mem. of Law at pp. 55-58.  However, his allegations against Defendants in this action concern events that occurred from 2003 through 2005, and the dispositive motion deadlines in all of the above cases, with the exception of *Benitez v. Straley,* were set for dates in 2006-2009.  Therefore, there is largely no possible connection between the alleged acts and Plaintiff's filing of dispositive motions in the above actions.

Finally, even if we were to assume, as Plaintiff apparently does, that his original allegation was that he has been continuously denied access to law library services by these Defendants from 2003 through the present day, the record shows that Plaintiff has been able to zealously pursue his many concurrent civil actions.  One need only peruse any one of the above-mentioned case dockets to see that Plaintiff has filed numerous letter requests; motions to compel discovery, for sanctions, for injunctive relief, and to amend; appeals to the Second Circuit and of Magistrate Judges' orders; responses to dispositive and other motions, etc.  Reference is made to the Defendants' Memorandum of Law, pp. 23-25, for an undisputed summary of Plaintiff's filings in these cases.  Given Plaintiff's self-proven access to the Courts, we find that no reasonable jury could conclude that these Defendants caused him an actual injury.  Therefore it is recommended that Plaintiff's access to the courts claims be **dismissed** pursuant to FED. R. CIV. P. 56(c) and 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3.  *Denied Copies of Misbehavior Reports*

Plaintiff alleges that he was not given copies of several misbehavior reports filed against him.  Compl. at ¶¶ 10(2), 32, 35, & 37.  To the extent Plaintiff is alleging that his due process rights were violated because he did not have notice of the charges brought against him before the commencement of disciplinary hearings, those potential due process violations would not be ripe for the reasons stated above.  Therefore, it is recommended that these claims be **dismissed**.

### E.  Conspiracy Claims

Plaintiff claims that several Defendants conspired to violate his constitutional rights in violation of § 1983.[12]  Specifically, Plaintiff alleges several Defendants conspired to (1) confine him in SHU cell 10-C1-13, Compl. at ¶¶ 3 & 6; (2) deny him recreation, Compl. at ¶ 9; and (3) subject him to excessive force, Compl. at ¶¶ 19-23.

To support a conspiracy claim under § 1983, a plaintiff must demonstrate (1) an agreement between two or more state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Ciambriello v. County of Nassau,* 292 F.3d 307, 324-25 (2d Cir. 2002).   We have already recommended that Plaintiff's underlying claims regarding the conditions of his confinement, minus his claims of food deprivations, be dismissed.  *See supra* Part II.B(2).  Absent a demonstration that Plaintiff's constitutional rights were violated, Plaintiff's conspiracy claims based on those alleged violations cannot survive.  *See, e.g. Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir. 1995) ("[A] plaintiff alleging a § 1983 conspiracy claim must prove an actual violation of constitutional rights.").  Therefore, it is recommended that Plaintiff's conspiracy claims regarding the conditions of his confinement and his denial of recreation be **dismissed**.

With respect to Plaintiff's claim that the Defendants conspired to beat him in violation of the Eighth Amendment, the Defendants allege that such claim is barred by the intra-corporate conspiracy doctrine.  Defs.' Mem. of Law at pp. 18-19.  The intra-corporate conspiracy doctrine "provides that officers, agents, and employees of a single corporate entity are legally incapable of conspiring together[,]" and it applies to § 1983 conspiracy claims.  *Medina v. Hunt*, 2008 WL

---

[12] Plaintiff does not bring a conspiracy claim pursuant to 42 U.S.C. § 1985.  *See* Pl.'s Mem. of Law at pp. 43-45.

4426748, at *7-8 (N.D.N.Y. Sept. 25, 2008); *Orafan v. Goord*, 411 F. Supp. 2d 153, 164-65 (N.D.N.Y. 2006) (holding that the conspiracy claim failed because the alleged co-conspirators were all DOCS officials and employees acting within the scope of their employment) (internal citations and quotations omitted) *reversed and remanded on other grounds by Orafan v. Rashid*, 249 Fed. Appx. 217 (2d Cir. 2007); *see also Scott v. Goord*, 2004 WL 2403853, at *13 (S.D.N.Y. Oct. 27, 2004).  There is an exception to the applicability of the intra-corporate conspiracy doctrine when individuals "pursue personal interests wholly separate and apart from the entity."  *Orafan v. Goord*, 411 F. Supp. 2d at 165 (internal quotations and citations omitted).

In this case, Plaintiff is suing all the Defendants in their personal capacity.[13]  Compl. at p. 4.  Furthermore, Plaintiff is not suing the Defendants for enforcing DOCS policies while acting within the scope of their employment.  He is claiming that the Defendants maliciously set out to violate his constitutional rights by, *inter alia*, beating him and taking steps to cover up their use of excessive force.  Thus, Plaintiff alleges that the Defendants were pursuing "personal interests wholly separate and apart from" those of DOCS, and therefore the exception to the intra-corporate conspiracy doctrine applies.  *Medina v. Hunt*, 2008 WL 4426748, at *8-9 (intra-corporate conspiracy doctrine did not apply when plaintiff alleged sufficient facts to suggest defendants were not acting, and knew they were not acting, in the interest of DOCS); *cf. Orafan v. Goord*, 411 F. Supp. 2d at 164-65 (intra-corporate conspiracy doctrine applied when plaintiff alleged defendants acted through DOCS policies and customs and did not allege defendants were acting outside of the scope of their employment).  Therefore, the intra-corporate conspiracy doctrine does not bar Plaintiff's claim that several Defendants conspired to use excessive force against him.

---

[13] Plaintiff is also suing Defendant Selsky in his official capacity.  Compl. at p. 4.

Therefore, it is recommended that Defendants' Motion for Summary Judgment be **denied** as to that conspiracy claim.

### F. Harassment

Plaintiff alleges that Defendants Perry and Vann threatened and harassed him.  Compl. at ¶ 19.  It is well settled law in this Circuit that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse."  *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (citing *Alnutt v. Cleary*, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996)); *Petway v. City of New York*, 2005 WL 2137805, at *3 (E.D.N.Y. Sept. 2, 2005); *Larocco v. N.Y. City Dep't of Corr.*, 2001 WL 1029044, at *5 (S.D.N.Y. Aug. 31, 2001).  Thus, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983."  *Moncrieffe v. Witbeck*, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (quoting *Aziz Zarif Shabazz v. Pico,* 994 F. Supp. 460, 474 (S.D.N.Y. 1998)).  Additionally, "threats do not amount to violations of constitutional rights."  *Id.* (quoting *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)).

Therefore, to the extent Plaintiff intended to bring these allegations as constitutional violations in their own right, it is recommended that they be **dismissed**.

### G. Access to Inmate Grievance System

Plaintiff alleges that from October 2004 through the filing of his Complaint, Defendants LaFrance, Peary, and Gregory refused to file and process numerous grievances he attempted to submit. Compl. at ¶ 68.  To the extent Plaintiff is alleging that the Defendants' failure to process his grievances constitutes a constitutional violation, that claim must be dismissed because "inmate

grievance programs created by state law are not required by the Constitution and consequently allegations that prison official violated [grievance] procedures do [] not give rise to a cognizable § 1983 claim." *Shell v. Brzezniak*, 365 F. Supp. 2d 363, 370 (W.D.N.Y. 2005) (citations omitted); *see also Carroll v. Callahan,* 2007 WL 965435, at *6 (N.D.N.Y. Mar. 30, 2007).

In his response to the Defendants' Motion for Summary Judgment, Plaintiff argues that this claim is one of retaliation. Pl.'s Mem. of Law at pp. 48-52. However, no such retaliation claim concerning Plaintiff's access to the inmate grievance system is present in the Complaint. New allegations are not properly brought in a response to a dispositive motion, and therefore, Plaintiff's new retaliation claim is not properly before the Court. However, even if we were to consider Plaintiff's new retaliation claim, it would still fail because it is conclusory. Plaintiff fails to identify the nature of the grievances he wished to file, the circumstances under which his grievances were refused and by whom, the dates he attempted to file them, and how many grievances were allegedly not processed. *See Bell. Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1958-9 (2007) (stating that a valid claim must have enough factual allegations "to raise a right to relief above the speculative level"). Therefore, Plaintiff has failed to allege and demonstrate that he was engaged in a constitutionally protected activity, and that the Defendants took adverse actions against him. As such, we recommend **dismissal** as to this claim.

### H.  Supervisory Liability

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement.

Therefore, a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted).

Nevertheless, if a plaintiff seeks to bring a § 1983 action for supervisory liability, liability on the part of the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d at 873) (further citations omitted).

In this case, Plaintiff alleges that in many instances, Defendants knew and approved of unconstitutional acts that occurred and/or were occurring, and failed to remedy those wrongs. Because we have recommended that several of Plaintiff's claims be dismissed, there can be no supervisory liability based on those claims. Therefore, it is recommended that Plaintiff's claims of supervisory liability be **dismissed** with respect to those underlying claims for which we have already recommended dismissal.

With respect to Plaintiff's remaining claims, in several instances, Plaintiff lists Defendants whom he claims had knowledge and approved of the alleged underlying constitutional violations. Compl. at ¶¶ 4, 11-12, 15, 25, 28, 30, 33-34, 36, 38-40, 42-44, 47-50(1), 51, 55, 66, & 71. He does not allege any facts with respect to how these Defendants were made aware of the alleged underlying constitutional violations, nor in what context they "approved" of the actions allegedly

*-32-*

being taken.  *See Benitez v. Locastro*, 2008 WL 4767439, at *13 (N.D.N.Y. Oct. 29, 2008) (granting

dismissal of a supervisory against a defendant because Benitez failed to allege specific sufficient

facts of personal involvement but denying dismissal of another supervisory claim because Benitez

alleged specific facts as to that defendant's personal involvement); *see also Word v. Croce*, 169 F.

Supp. 2d 219, 228 (S.D.N.Y. 2001) (dismissing supervisory liability claims when plaintiff failed to

allege specific facts as to how the defendants had knowledge of the alleged violations).  We note that

"[m]ere awareness of a constitutional violation . . . is insufficient to impose liability." *Johnson v.

Wright*, 234 F. Supp. 2d 352, 364 (S.D.N.Y. 2002).  Therefore, these claims of supervisory liability

are conclusory and it is recommended that they be **dismissed**.

### I. Qualified Immunity

        Defendants present the affirmative defense of qualified immunity.  Defs.' Mem. of Law at

p. 26. Qualified immunity will shield "government officials from liability for civil damages when

their conduct does not violate 'clearly established statutory or constitutional rights of which a

reasonable person would have known.'"  *Id.* at 359 (2d Cir. 2002) (quoting *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982)); *see also Mollica v. Volker*, 229 F.3d 366, 370 (2d Cir. 2000).  Violation

of a duty under state law does not defeat qualified immunity because there must be a clearly

established *federal* right on which the claim for relief is based.  *Elder v. Holloway*, 510 U.S. 510,

515-16 (1994) (citing *Davis v. Scherer*, 468 U.S. 183, 197 (1984)).  In order for the constitutional

right to be clearly established, three elements must be met: "1) . . . [that] the right in question [be]

defined with reasonable specificity; 2) [that] the decisional law of the Supreme Court and applicable

circuit court support the existence of the right in question; and 3) [that] under preexisting law a

reasonable defendant official would have understood that his or her acts were unlawful." *Mollica*

*v. Volker*, 229 F.3d at 371 (internal quotation marks and citations omitted) (alterations in original).

Defendants argue that they are entitled to qualified immunity because record shows they "clearly acted reasonably." Defs.' Mem. of Law at p. 26. However, Plaintiff's surviving claims concern the alleged deprivation of constitutional rights that have been firmly established by the Supreme Court, and furthermore, questions of fact remain as to the actions taken by the Defendants with respect to those claims. Therefore, it is recommended that summary judgment on the grounds of qualified immunity be **denied** at this juncture.

### J. Failure to Serve

A review of the docket sheet reveals that Defendants D. Lawrence, J. Botta, F. Kaufman, and John Does 1-3 have not been served with process. *See* Dkt. Nos. 35, 38, & 44. Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period. Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m).[14] Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant. *Id.*

Although the courts must afford plaintiffs notice before they may dismiss a claim for failure to serve a defendant, FED. R. CIV. P. 4(m), in this case, Plaintiff's only claim against Defendant Botta concerns his access to the courts claim which has been recommended for dismissal. Compl. at ¶ 69. Therefore, granting Plaintiff the opportunity to properly serve Botta would be futile. Thus, it is recommended that Plaintiff's claim against Defendant Botta be **dismissed**.

With respect to Defendants D. Lawrence, F. Kaufman, and John Does 1-3, there are claims

---

[14] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y.L.R. 4.1(b).

against them which have not been recommended for dismissal.  Therefore, the Court shall afford Plaintiff **thirty (30) days** from the filing date of this Report-Recommendation and Order to show cause why his Complaint should not be dismissed as against Lawrence, Kaufman, and John Does 1-3.  **Plaintiff is warned that his failure to show cause will result in this Court recommending dismissal of all his claims against these Defendants.**

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion for Summary Judgment (Dkt. No. 144) be **granted in part** and **denied in part** in accordance with the above opinion, pursuant to FED. R. CIV. P. 56(c) and 28 U.S.C. § 1915(e)(2)(B)(ii); and it is further

**RECOMMENDED**, that the following Defendants be dismissed from this action: B. Mailloux, N. Smith, C. Richards, L. Wright, Smithers, P. Sawyer, D. Quinn, N. Bezio, D. LaClair, R. Woods, R. Wright,  G. LaFrance, E. Liberty, B. Kourofsky, D. King, T. Zerniak, G. Canning, R. Keith, J. Martin, A. Boucaud, S. Salls, D. Uhler, R. Bishop, D. Clancy, L. Peary, W. Crozier, K. Bellamy, T. Eagen, G. Bedard, C. Rowe, M. Lambert, K. Caron, J. Boulrice, J. Oropallo, M. McDonald, B. Meacham, W. Trombley, D. Riley, R. Legacy, G. Soucia, J. Anctil, D. Selsky, J. Bennett, and J. Botta; and it is further:

**ORDERED**, that **within thirty (30) days** of the filing date of this Report-Recommendation and Order, Plaintiff show cause why Defendants D. Lawrence, F. Kaufman, and  John Does 1-3 should not be dismissed from this action due to Plaintiff's failure to effectuate service of process pursuant to Fed. R. Civ. P. 4(m).  **Plaintiff is warned that his failure to respond to this Order to Show Cause within thirty (30) days of the filing date of this Report-Recommendation and**

**<u>Order will result in this Court recommending dismissal of his claims against these Defendants</u>**;

and it is further

   **ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties to this action.

   Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE</u>**

**<u>APPELLATE REVIEW.</u>**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y*

*of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R.

Civ. P. 72, 6(a), & 6(e).


Date: March 25, 2009
    Albany, New York




           RANDOLPH F. TREECE
           United States Magistrate Judge